## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TINA MARIE GRIFFIN,

      Plaintiff,

v.                             CASE NO. 8:19-cv-1860-T-TGW

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.

_____/

## O R D E R

      The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits (Doc. 13).[1]  Because the Administrative Law Judge's findings that the plaintiff's mental impairments were nonsevere and do not warrant any limitations in the residual functional capacity are not supported by substantial evidence, the decision of the Commissioner of Social Security will be reversed and the matter remanded for further consideration.

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 11).

I.

The plaintiff, who was fifty-nine years old at the time of the administrative decision and who has a tenth-grade education, has worked as a media sales representative (Tr. 37–38, 61). She filed a claim for Social Security disability benefits, alleging that she became disabled on September 21, 2016, due to stage 1 breast cancer, lymphozena [sic], trigger finger, anxiety, depression and possible lupus (Tr. 204). The plaintiff's claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff has the following severe impairments: "history of carcinoma of the left breast with mastectomy; degenerative disc disease of the lumbar spine; plantar fasciitis and Achielles tendonitis; and history of aortic insufficiency" (Tr. 17). The law judge found further that, although the plaintiff has medically determinable impairments of depression and anxiety, they do not cause more than a minimal limitation in the plaintiff's ability to perform basic mental work activities and, therefore, are nonsevere (<u>id</u>.). She determined that the plaintiff (Tr. 20):

> has the residual functional capacity to occasionally
> lift and/or carry 10 pounds; frequently lift and/or

2

carry less than 10 pounds; able to stand and/or walk with normal breaks for two hours of an eight-hour workday; able to sit for six hours with normal breaks of an eight-hour workday; occasionally climb ramps and stairs; never climbing of ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; occasionally overhead reach bilaterally; occasional exposure to extreme cold, extreme heat, wetness, and humidity; and workplace hazards such as moving mechanical parts of equipment, tools, and machinery.

The law judge ruled, based on the testimony of a vocational expert, that notwithstanding these limitations the plaintiff "is capable of performing past relevant work as a media sales representative" (Tr. 26).[2] Consequently, the law judge concluded that the plaintiff was not disabled from September 21, 2016, through the date of the decision on August 22, 2018 (Tr. 27).

The plaintiff sought review of that decision from the Appeals Council. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner of Social Security.

---

[2]According to the DOT, this past work is a light job, skilled, SVP 6. The plaintiff, however, performed the job at a sedentary level (Tr. 26). Therefore, the law judge found that she could do this job as she actually performed it (id.).

3

II.

A.    In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). A claimant will be found not disabled, however, if she can perform past relevant work. 42 U.S.C. 423(d)(2)(A).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a

4

contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied, and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B.    The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520.

5

One of the threshold inquiries (step two) is whether a claimant has a medically determinable impairment and its severity. 20 C.F.R. 404.1520(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1522(a). If an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c). When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in substantial numbers in the national economy. 20 C.F.R. 404.1520(g).

## III.

The plaintiff challenges the law judge's evaluation of her mental impairments (Doc. 13). She contends that the law judge improperly rejected opinions of disability from two treating doctors and, alternatively, that substantial evidence does not support the law judge's omission of mental limitations from her residual functional capacity (id., pp. 12, 26–27).* The

---

*Page numbers correspond to the pagination in CM/ECF.

plaintiff's latter argument has merit and warrants remand.

As brief background, the plaintiff underwent a mastectomy in 2014 due to breast cancer, and she was prescribed adjuvant hormonal therapy to reduce the likelihood of a cancer recurrence (see Tr. 647). The treatment records show that, over time, the plaintiff's side effects from the hormone therapy, which included the development of arthralgias and anxiety and depression, became intolerable (see Tr. 385). Consequently, in the months prior to the alleged onset date, and through the alleged disability period, the plaintiff discontinued, restarted and changed her hormonal therapy (see Tr. 777–78). However, treatment records reflect that the plaintiff's anxiety and depression persisted.

A.     The plaintiff argues that the law judge failed to state good cause for rejecting the opinions of Dr. Melissa Bailey, her treating psychologist, and Dr. Gregorie Bergier, her treating oncologist, both of whom essentially opined that the plaintiff's mental impairments were disabling (Doc. 13, pp. 11–26).

The opinions of treating physicians are entitled to substantial or considerable weight absent a showing of good cause.   Schink v. Commissioner of Social Security, 935 F.3d 1245, 1259 (11th Cir. 2019).

7

Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Id. The law judge "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Dr. Bergier completed on April 5, 2018, a Medical Opinion Re: Ability To Do Work-Related Activities (Physical) form in which he opined that the plaintiff would be off-task for 30-40% of the workday and absent more than three times a month due to physical ailments and anxiety (Tr. 690–93). The plaintiff contends, in a cursory manner, that the law judge improperly discounted these opinions (Doc. 13, pp. 24–26).

The law judge gave a lengthy and thorough explanation that the medical evidence of the plaintiff's physical ailments did not support this opinion (see Tr. 22–24). The law judge also stated that Dr. Bergier failed to connect his opinion that the plaintiff would be absent from work three or more days per month to specific symptoms (Tr. 25). This explanation states good cause for rejecting this opinion. See Schink v. Commissioner of Social Security, supra, 935 F.3d at 1259 (Good cause exists when the treating

8

physician's opinion is not bolstered by the evidence, or the opinion is conclusory).

The plaintiff argues that Dr. Bergier's opinions are supported by Dr. Bergier's diagnoses and treatment notes which identified hot flashes and body aches (Doc. 13, p. 25). However, diagnoses, in themselves, do not prove disability. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (The "'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.") Furthermore, the plaintiff fails to identify evidence that her hot flashes and body aches were of the duration and intensity to preclude gainful employment.[3]

The plaintiff contends further that the law judge should have accepted Dr. Bergier's opinions because "[a]s a medical expert he was in a position to have the expertise to assess [the plaintiff's] condition and the limitations associated with it" (Doc. 13, pp. 25–26).   However, blind

---

[3]The plaintiff also asserts that she "had a need for regular follow-up to her treatment ... twelve times in 2016" (Doc. 13, p. 25). Thus, she appears to argue that she would miss an unacceptable number of workdays to attend physician appointments. This contention is frivolous because Dr. Bergier did not opine the plaintiff would miss work three or more days per month to attend doctor's appointments (see Tr. 690–93).

9

deference to the opinions of medical doctors, even treating physicians, is not the law.  See Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983). Therefore, the plaintiff has not undermined the law judge's reasons for rejecting Dr. Bergier's opinions that the plaintiff is essentially disabled from working (see Doc. 13, pp. 24–25).

The plaintiff also argues that the law judge erred in rejecting the opinions of her treating psychologist, Dr. Bailey (id., p. 20). The plaintiff treated with Dr. Bailey on five occasions during 2017 and 2018.  She reported to Dr. Bailey frequent crying spells, feeling hopeless, "brain fog" and poor attention and concentration (Tr. 656, 677, 678, 749, 773).  Dr. Bailey diagnosed the plaintiff with major depression and anxiety disorder and referred her to a medical doctor for an antidepressant (Tr. 675, 677, 684, 749, 773).

Dr. Bailey completed on August 29, 2017, and April 24, 2018, Mental Ability To Do Work-Related Activities forms. She opined, by placing checkmarks on these forms, that the plaintiff has no useful ability to function, or is unable to meet most competitive standards, for 15 mental tasks related to concentration, persistence, pace, memory, social interaction and stress (Tr. 655–56, 772–73).  Thus, Dr. Bailey essentially opined that the

10

plaintiff was disabled.

The law judge assigned "little weight" to Dr. Bailey's opinions because, among other reasons, "Dr. Bailey's own treatment notes describe symptoms such as anxiousness and crying spells, but do not describe symptoms that would impose the degree of functional limitations that Dr. Bailey described in these opinions" (Tr. 25–26). This explanation states good cause for discounting Dr. Bailey's conclusory opinions of disabling mental functional limitations. See Schink v. Commissioner of Social Security, supra, 935 F.3d at 1259 (Good cause exists when the treating physician's opinion is not bolstered by the evidence or the opinion is conclusory or inconsistent with the physician's own medical records.).

The plaintiff responds that the law judge is impermissibly "playing doctor," and that Dr. Bailey's opinions are supported by Dr. Bailey's treatment notes which document crying spells, anxiety, sleeplessness, agitation, and poor memory (Doc. 13, pp. 22–24). Although, as discussed infra, these symptoms undoubtedly support the presence of a severe mental impairment, Dr. Bailey's clinical findings and objective signs do not support the extreme functional limitations opined in the Mental Ability To Do Work-Related Activities forms, including, for example, that

11

the plaintiff had "[n]o useful ability" to perform basic tasks such as carrying out "very short and simple instructions" or "maintain attention for [a] two hour segment" (Tr. 772). Therefore, this argument also fails.

On the other hand, the law judge's reasoning for discounting these opinions of disabling limitations does not constitute substantial evidence that the plaintiff did not have any mental functional limitations.

B.     In this respect, the plaintiff argues, even if the law judge could reasonably reject the treating physicians' opinions of disabling functional limitations, the law judge fails adequately to explain why these opinions, and other record evidence, do not warrant the inclusion of any mental limitation in her residual functional capacity (Doc. 13, pp. 26–27).

The law judge's omission of a mental limitation from the plaintiff's residual functional capacity is a critical decision. As the law judge described, the plaintiff's past work was "skilled and socially demanding" (Tr. 18), so that it is highly unlikely that she could perform this job if even one moderate mental functional limitation was included in the residual functional capacity. Furthermore, if the plaintiff was unable to perform her past work, she would have been deemed disabled under the Medical Vocational Guidelines because she was of advanced age and could perform

only sedentary work. Rule 201.02, 20 C.F.R. Pt. 404, Subpt. P, App. 2.

The law judge found that the plaintiff had "medically determinable mental impairments of depression and anxiety" but that the mental impairments cause no more than mild limitation in any of the four broad functional areas and, therefore, are nonsevere (Tr. 17, 19). See Cuthbert v. Astrue, 303 Fed. Appx. 697, 699 (11th Cir. 2008) (when the degree of limitation in each of the functional areas is none or mild, the Commissioner generally concludes that the impairment is not severe).

"An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); 20 C.F.R. 404.1521(a). This definition "allows only claims based on the most trivial impairments to be rejected." McDaniel v. Bowen, supra, 800 F.2d at 1031.[4] Based on this standard, substantial evidence does not support the law judge's conclusion that the plaintiff's mental impairments are nonsevere and,

---

[4]The plaintiff's argument focuses on the omission of a mental limitation from the residual functional capacity, and not whether the law judge erred in finding her mental impairments nonsevere. However, by this argument, the plaintiff is essentially contending that her mental impairments are severe, i.e., they interfere with her ability to work and therefore require accommodation in the residual functional capacity.

therefore, do not require the inclusion of mental limitations in the residual functional capacity.

The plaintiff stated, and her physicians' treatment notes document reports of, frequent anxiety attacks during which the plaintiff has crying spells, her heart races and she sometimes has shortness of breath (see, e.g., Tr. 240–41, 594, 675). The plaintiff elaborated that, on those days, she has trouble functioning; thus, she does not get a lot done and it is "harder … to communicate with [others] because [she] get[s] very upset and pushy" (Tr. 41, 49–51). The plaintiff testified that she has anxiety attacks every two or three days (Tr. 51).

Dr. Bailey consistently documented the plaintiff's mental status as tearful, anxious, and sad, but alert; and she diagnosed the plaintiff with major depression, severe; and anxiety (Tr. 675, 677, 684, 749). Dr. Bergier noted the plaintiff's emotional lability and tearfulness, and opined that the plaintiff had "severe anxiety and depression" (Tr. 277, 518, 777–78). The plaintiff's primary care physician, Dr. Lauren Holderith, diagnosed the plaintiff as having "moderate depression, anxiety" (Tr. 716).

Furthermore, there is medical evidence that the plaintiff's depression and anxiety impaired her mental functioning. For example, Dr.

14

Bailey documented "poor attention and concentration" (Tr. 773), and Dr. Bergier noted emotional distress, poor concentration, and that the totality of the plaintiff's physical and mental symptoms are interfering with her daily functioning (Tr. 647). Notably, the plaintiff reported to her physician that, despite anti-depressant medication, "she still feels down several days per week, has decreased general interest, and trouble concentrating" (Tr. 715).

Moreover, non-examining reviewing psychologist, Dr. Jessy Sadovnik, opined that the plaintiff's mental impairments caused moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace which limited the plaintiff to jobs involving "simple and repetitive tasks" (Tr. 73, 79). In sum, the record contains ample evidence that the plaintiff has severe mental impairments requiring mental work limitations in the residual functional capacity.

The law judge acknowledged that "the treatment notes describe some symptoms such an anxiousness and crying spells," but she concluded that these symptoms "are not likely to moderately limit the claimant's ability to function socially or to concentrate, persist, or maintain pace" (Tr. 25).

Specifically, the law judge reasoned (Tr. 19):

At the hearing, the claimant vaguely alleged that she would have some difficulties with

15

concentrating, persisting, or maintaining pace, but she seemed to attribute these difficulties as much to symptoms of physical impairments such as side effects of anti-cancer medications rather than symptoms of mental impairments. In the most recent function report, the claimant vaguely alleged that her ability to pay attention varies from day to day, but does not offer any specifics in her allegations (Exhibit 14E/8). Dr. Keith Bauer conducted a thorough and independent review of the record on November 21, 2016, and concluded that the claimant has no more than a mild degree of limitation in any of the areas of mental functioning, including the functional area of maintaining concentration, persistence or pace (Exhibit 4A). During the hearing, the undersigned observed that the claimant remained focused and attentive. Not once did the undersigned observe a lapse in the claimant's concentration. Based on hearing testimony, the undersigned's observations, and a thorough review of the record, the undersigned finds that the claimant has mild limitation in the functional area of concentrating, persisting or maintaining pace.

The plaintiff persuasively argues this explanation is inadequate because the law judge relies on outdated opinions from a non-examining, reviewing doctor; the law judge gives undue weight to observations of the plaintiff at the hearing; and she misunderstands the episodic nature of the plaintiff's complaints (Doc. 13, p. 19).

Initially, the law judge's comment that the plaintiff's allegations were vague is meritless. As the law judge summarized in the

16

decision, the plaintiff testified that she "fluctuates between good and bad days. On bad days, the claimant explained that she is extremely anxious and struggles to get anything useful done" (Tr. 21). Thus, if the plaintiff's statements are credible, she has mental impairments that would be expected to interfere with her ability to maintain concentration, persistence or pace, and require accommodation in the residual functional capacity. 20 C.F.R. 404.1520a.

The law judge, in deciding the plaintiff's mental impairments were nonsevere, gave considerable weight to her favorable observations of the plaintiff during the hearing (Tr. 18, 19). She noted that the plaintiff "remained focused and attentive" and "was polite and cooperative" (id.). Furthermore, the law judge commented that "[n]ot once [during the hearing] did the undersigned observe the claimant exhibiting any significantly abnormal or distracting behaviors" and, "[d]espite the undoubted stress, the claimant never appeared to be unusually anxious or irritable" (Tr. 18). The plaintiff argues that the law judge placed undue reliance on her brief observations of the plaintiff at the hearing.

A law judge is not prohibited from considering the claimant's appearance and demeanor during a hearing. Norris v. Heckler, 760 F.2d

17

1154, 1158 (11th Cir. 1985).   The plaintiff contends, however, that the law judge's observations do not consider that the intensity of the plaintiff's anxiety symptoms vary, i.e., she has good and bad days. Therefore, the plaintiff argues, the fact that she was "not having a panic attack at the hearing is insufficient evidence to disregard her complaints and the medical findings" (Doc. 13, p. 17).   The plaintiff's contention is persuasive.   Thus, it is axiomatic that "people with chronic diseases can experience good and bad days. And when bad days are extremely bad and occur with some frequency, they can severely affect a person's ability to work."   See Schink v. Commissioner of Social Security, supra, 935 F.3d at 1267.

Furthermore, the plaintiff points out, "at the time of the hearing, [she] was not experiencing the rigors of full-time work, with the expectations of production, being on time and dealing with coworkers" (Doc. 13, p. 21). Thus, the plaintiff's ability to maintain attention during the 35-minute administrative hearing says little about whether she could persist at a highly skilled sales job eight hours per day, five days per week. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C6b (The demonstration of abilities in settings that are less demanding than a typical work setting "does not necessarily demonstrate [an applicant's] ability to complete tasks in the context of

18

regular employment during a normal workday or work week."); see also 20 C.F.R. Part 404, Subpart P, App. 1, §12.00C3 (The broad area of concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.). In sum, the law judge's brief observations of the plaintiff at the hearing are insufficient to support her rejection of severe mental functioning limitations.

The law judge also relies heavily on the opinions of a non-examining, reviewing psychologist. Dr. Keith Bauer opined in a Psychiatric Review Technique dated November 21, 2016, that the plaintiff had only mild impairments in maintaining social functioning and maintaining concentration, persistence or pace (see Tr. 92–93). Notably, Dr. Bauer is the only doctor to opine that the plaintiff's mental functional limitations are mild. The plaintiff's treating doctors, and the other non-examining reviewing psychologist, all opined that the plaintiff had mental work limitations that required accommodation in the residual functional capacity.

The plaintiff challenges the law judge's reliance on Dr. Bauer's opinions because "most of the medical evidence pertaining to [her] mental impairments such as anxiety were not noted or properly assessed until 2017

19

and 2018" (Doc. 13, p. 19). Thus, Dr. Bauer did not have for his consideration the psychologist's records or Dr. Bergier's opinions of the plaintiff's mental functioning limitations.

A law judge may rely upon the opinion of a doctor who was unable to review subsequent records when the law judge considers the relevant medical records submitted after the opinion was rendered, and substantial evidence otherwise supports the law judge's decision. See Deyounks v. Saul, No. 4:18-cv-543-RH-EMT, 2019 WL 7373371 at *15 (N.D. Fla.); Zellner v. Astrue, No. 3:08-cv-1205-J-TEM, 2010 WL 1258137 at *7 (M.D. Fla.). In this case, the medical evidence developed after Dr. Bauer gave his opinions is not consistent with his opinion of mild mental functional limitations, and the law judge does not otherwise state a cognizable basis for giving this outdated medical opinion substantial weight.

Rather, the law judge assigned "significant weight" to Dr. Bauer's opinion because she "agrees with his general view that the claimant's mental impairments impose no more than a mild degree of functional limitations" (Tr. 25). The law judge's adoption of Dr. Bauer's opinion because it is consistent with her own opinion is improper bootstrapping. Therefore, Dr. Bauer's opinions are not substantial evidence

that the plaintiff's mental impairments were nonsevere.

In sum, the law judge's reasons for rejecting that the plaintiff has a moderate limitation in concentration, persistence and/or pace are insufficient and unavailing.

The plaintiff also challenges the law judge's reasoning for omitting a social functioning limitation from the residual functional capacity. In this respect, the law judge stated (Tr. 18–19):

> At the hearing, the claimant and her husband described the claimant experiencing bouts of anxiety that they say sometimes paralyze her with fear and panic. However, they did not describe the claimant getting into any major conflicts with other people once thrust into social situations. Indeed, they both described the claimant working successfully for years in a sales job, which required significant social interactions. In the first function report she completed, the claimant indicated that she gets along "good" with authority figures…. Curiously, she attributed her inability to get along with others as much to side effects of medications as to any mental impairments…. In the most recent function report, she did not indicate losing a job due to problems getting along with other people, and she did not indicate any problems getting along with authority figures…. The most recent mental health treatment notes describe the claimant experiencing symptoms such as crying spells and anxiousness (Exhibit 17F, 21F). However, these treatment notes never adequately explain how the claimant had the mental capacity to excel at performing skilled and

21

socially demanding work for so many years, and then purportedly became unable to perform such work after the alleged onset date. Dr. Keith Bauer conducted a thorough and independent review of the record on November 21, 2016, and concluded that the claimant has no more than a mild degree of limitation in any of the areas of mental functioning including social functioning.... During the hearing, the undersigned found the claimant to be polite and cooperative. Not once did the undersigned observe the claimant exhibiting any significantly abnormal or distracting behaviors. Despite the undoubted stressfulness, the claimant never appeared to be unusually anxious or irritable. Based on hearing testimony, the undersigned's observations, and a thorough review of the record, the undersigned finds that the claimant's mental impairments impose no more than a mild limitation in the functional area of interacting with others.

As discussed supra, pp. 18–21, the law judge's observations of the plaintiff at the hearing, and Dr. Bauer's outdated opinions, do not constitute substantial evidence that the plaintiff's mental impairments are nonsevere. Furthermore, the plaintiff aptly notes that her successful career history is irrelevant to whether her anxiety and depression subsequently diminished her ability to work. If anything, the plaintiff's prior success indicates that she is less likely to feign disability.

The law judge particularly questions "how the claimant had the mental capacity to excel at performing skilled and socially demanding work

22

for so many years, and then purportedly became unable to perform such work

after the alleged onset date" (Tr. 18).  Dr. Bergier, her long-time oncologist,

clearly answers this question:

> [The plaintiff] has been struggling with adjuvant
> hormonal therapy, experiencing numerous side
> effects, including arthralgias, severe anxiety and
> depression.  We have attempted to switch her
> medication without much improvement in her
> symptoms.  This has made it very difficult for [the
> plaintiff] to continue working effectively.

(Tr. 277; see also Tr. 517–18).

The plaintiff also argues that, in discounting the plaintiff's

allegations of problems with social interaction, the law judge misconstrued

her responses in Function Reports (Doc. 13, p. 21).  In this regard, the law

judge recounted the plaintiff's statements that she did not have problems

getting along with authority figures, that she had not lost a job on that basis,

and that she did not "get[] into major conflicts with other people" (Tr. 18).

Of course, the fact that the plaintiff has not been fired or embroiled in "major

conflicts" does not mean that no social interaction limitations are warranted,

especially in the context of returning to a sales job.  Furthermore, the plaintiff

argues, correctly, that the law judge ignores the plaintiff's Function Report

statements that she has trouble interacting with others when she is anxious

(see Tr. 248 (the plaintiff states that she has problems getting along with others "when my anxiety is high"); Tr. 274 (her anxiety "makes it difficult to be ... social")).  Therefore, while the law judge's explanation justifies the absence of a marked social functioning limitation, it is not substantial evidence for rejecting a moderate one.

In sum, the plaintiff presented ample medical and other evidence of severe mental impairments.  The law judge determined that, although the plaintiff has medically determinable impairments of depression and anxiety, they are nonsevere and, therefore, do not warrant the inclusion of any mental functional limitations in the residual functional capacity.  However, the law judge's reasoning does not constitute substantial evidence supporting the latter determination.  See Schink v. Commissioner of Social Security, supra, 935 F.3d at 1257 (Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").

Furthermore, if the law judge erred in reaching her conclusion that the plaintiff has only nonsevere mental impairments, the determination of the plaintiff's residual functional capacity and the hypothetical questions to the vocational expert are correspondingly erroneous.  Thus, if the plaintiff

24

had a severe mental impairment because she had a moderate mental functional limitation in social interaction and/or maintaining concentration, persistence or pace, the residual functional capacity and the operative hypothetical question would have to include that limitation. See, e.g., Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1181 (11th Cir. 2011).

It is, therefore, upon consideration,

**ORDERED**:

That the decision of the Commissioner is hereby **REVERSED** and the matter **REMANDED** for further proceedings. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 15th day of September, 2020.

Thomas G. Wilson

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

25